UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LLOYD FERDINAND, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 24-2812** |
| **ST. JAMES PARISH** | **SECTION I** |

### ORDER AND REASONS

Before the Court is a motion[1] to dismiss pursuant to Federal Rules of Civil 12(b)(1) and 12(b)(6) filed by defendant St. James Parish ("defendant"). Plaintiff Lloyd Ferdinand ("plaintiff") filed this lawsuit on behalf of himself and Lloyd's Auto & Towing Services, LLC ("Lloyd's Auto"), which he operates.[2] His complaint alleges various violations of the United States and Louisiana Constitutions. Plaintiff did not file an opposition to defendant's motion. For the reasons set forth below, the Court dismisses plaintiff's federal claims and remands the case to the 23rd Judicial District Court for the Parish of St. James for further adjudication of plaintiff's remaining state-law claims.

### I. BACKGROUND

Plaintiff initially filed this lawsuit against defendant in the 23rd Judicial District Court for the Parish of St. James.[3] His *pro se* complaint alleges various

---

[1] R. Doc. No. 5.
[2] R. Doc. No. 1-5.
[3] R. Doc. No. 1.

violations of the United States and Louisiana Constitutions arising from two separate incidents.[4]

The first incident referenced in the complaint allegedly involved the disposal of tree trimming and debris on a family-owned property in November 2023.[5] Plaintiff avers that he excavated a hole on the property to bury non-hazardous debris such as tree branches and trash when plaintiff's cousin, who holds partial ownership of the property, called St. James Parish Code Enforcement.[6] Subsequently, plaintiff alleges, at least two code enforcement officers came to the site, told plaintiff that the hole's depth violated regulations, and ordered plaintiff to refill the hole.[7] Plaintiff claims that one of the officers told plaintiff "I'm going to show you that you can't do whatever you think you can do" and demanded that plaintiff immediately remove the vehicles and equipment stored on the property even though plaintiff had used the property for storage and maintenance purposes for over 30 years.[8] Plaintiff further alleges that the same officer made false reports to the Louisiana Department of Environmental Quality ("DEQ") that plaintiff was storing hazardous materials and operating an unpermitted building on the premises.[9] According to plaintiff, these allegations were dismissed as unfounded after inspection of the property.[10]

---

[4] Since plaintiff failed to comply with this Court's order requiring plaintiff to have counsel enroll on behalf of Lloyd's Auto, the Court dismissed Lloyd's Auto from this proceeding. *See* R. Doc. No. 15.
[5] R. Doc. No. 1-5, ¶ 5.
[6] *Id.* ¶¶ 5–6.
[7] *Id.* ¶¶ 7–8.
[8] *Id.* ¶¶ 9–10.
[9] *Id.* ¶ 11.
[10] *Id.* ¶ 12.

2

The second incident involved the denied permit application as to another of plaintiff's properties, which plaintiff designates as his "commercial property." According to plaintiff, the same officer who told plaintiff to remove vehicles and equipment from plaintiff's other property "improperly" reclassified plaintiff's commercial property as residential.[11] This had the effect of "hindering [p]laintiff's permit application for placing manufactured structures on the site."[12] Plaintiff asserts that defendant has allowed similar businesses to operate in residential and mixed-use areas.[13]

Plaintiff contends that these incidents amount to selective enforcement, unconstitutional takings, and procedural due process violations in contravention of the United States and Louisiana Constitutions.[14] Plaintiff cites 42 U.S.C. § 1983 only with respect to his claims for selective enforcement and discrimination.[15]

Prior to filing any responsive pleading, defendant removed this case from state court to this Court.[16] Defendant subsequently filed the instant motion.[17] Defendant moves pursuant to Rule 12(b)(1) only with respect to plaintiff's takings claim arising from the reclassification of plaintiff's commercial property.[18] Defendant moves pursuant to Rule 12(b)(6) with respect to all of plaintiff's claims.[19]

---

[11] *Id.* ¶ 15.
[12] *Id.*
[13] *Id.* ¶ 16.
[14] *Id.* ¶¶ 17–22,
[15] *Id.* ¶ 18.
[16] R. Doc. No. 1.
[17] R. Doc. No. 5.
[18] R. Doc. No. 5-1, at 6–7.
[19] *Id.* at 8–21.

## II. STANDARDS OF LAW

### a. Motion To Dismiss Pursuant to Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Pursuant to Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts must consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject-matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject-matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g., id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**b. Motion To Dismiss Pursuant to Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must meet the requirement in Rule 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While this short and plain statement does not require "detailed factual allegations," it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the [plaintiff's] claim." *Hi-Tech Elec., Inc. v. T&B Constr. & Elec. Servs.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and

5

internal quotations omitted). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (citation and internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III. ANALYSIS

Before determining whether plaintiff's claims withstand defendant's motion, the Court must identify which claims plaintiff asserts in his complaint. Since plaintiff is proceeding *pro se*, the Court must construe his complaint liberally even if inartfully pleaded. *See Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022). For its part, defendant identifies six claims: a claim for selective enforcement pursuant to the United States Constitution and the same pursuant to the Louisiana Constitution; a claim for an unconstitutional taking pursuant to the United States Constitution and the same pursuant to the Louisiana Constitution; and a claim for a procedural due

process violation pursuant to the United States Constitution and the same pursuant to the Louisiana Constitution.[20]

Having reviewed plaintiff's complaint, the Court discerns that plaintiff's complaint in fact asserts twelve claims. Although the complaint is not pellucid, the Court understands plaintiff to bring six causes of action with respect to each of the two incidents. With respect to his selective enforcement claims, plaintiff clearly asserts that the first incident amounted to selective enforcement and that the second incident constituted an instance of further discrimination.[21] With respect to his claims for unconstitutional takings, plaintiff asserts that both "the reclassification of [his] property and demand for removal of vehicles and equipment" amounted to takings.[22] Finally, with respect to his claims for violations of procedural due process, plaintiff asserts that he was denied due process when it was demanded that he remove vehicles from the property and when permits to build on his commercial property were refused.[23] Since plaintiff brings these six claims pursuant to both the United States and Louisiana Constitutions, he brings twelve claims altogether.

Having discerned which claims plaintiff brings in this lawsuit, the Court will analyze whether those claims survive defendant's motion to dismiss. The Court will analyze the claims by cause of action.

---

[20] *Id.* at 3.
[21] R. Doc. No. 1-5, ¶¶ 13–14.
[22] *Id.* ¶ 19.
[23] *Id.* ¶¶ 21–22.

### a. Federal Claims for Selective Enforcement

Plaintiff contends that defendant violated the Equal Protection Clause of the Fourteenth Amendment through selective enforcement. "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000); *see also Knapp v. U.S. Dep't of Agric.*, 796 F.3d 445, 467 (5th Cir. 2015) ("To successfully bring a selective enforcement claim, Knapp must show that the agency's enforcement was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." (internal quotation and citation omitted)). "As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently." *Id.* at 276; *see also Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020). "That not all violators are prosecuted does not alone establish a constitutional violation." *Knapp*, 796 F.3d at 467.

The Court concludes that plaintiff failed to state a claim for selective enforcement as to either incident. Although plaintiff does allege that other similarly situated businesses were treated differently,[24] plaintiff has not pled facts purporting that the alleged disparity in treatment is owed to an invidious group-based classification.[25] With respect to the incident involving the family property, plaintiff's

---

[24] *Id.* ¶ 16.
[25] Although the complaint may be read to allege that the officer acted out of personal vindictiveness, the Fifth Circuit has never recognized personal vindictiveness as an

8

allegation that that officer told plaintiff he could not do whatever he liked does not amount to an impermissible classification. With respect to the denial of a permit application, plaintiff does not allege that the denial of the permit was done for a specific purpose—let alone for an invidious one.

Accordingly, the Court will dismiss plaintiff's federal selective-enforcement claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### b. Federal Takings Claims

As explained above, plaintiff seems to make two distinct takings claims. Defendant contends that these claims should be dismissed either for jurisdictional defects or for plaintiff's failure to state such claims. The Court concludes that both claims must be dismissed.

The Takings Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation. *See Murr v. Wisconsin*, 582 U.S. 383, 392 (2017). The Supreme Court distinguishes between "acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002).

---

improper motive for the purposes of a selective-enforcement claim and has suggested that it "by itself is insufficient as an improper motive in the absence of some other class– or group-based discrimination." *See Beeler v. Rounsavall*, 328 F.3d 813, 818 (5th Cir. 2003) (internal quotation and citation omitted); *see also Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008) (treating claims for selective enforcement and personal vindictiveness as distinct claims); *Mikeska v. City of Galveston*, 451 F.3d 376, 381 n.4 (5th Cir. 2006) (same).

9

Regulations of private land use that are too restrictive are referred to as "regulatory takings." *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021).

The Supreme Court has recognized two forms of regulatory takings. With certain qualifications, a *per se* regulatory taking occurs when the regulation in question denies all economically beneficial or productive use of the land. *See Murr*, 582 U.S. at 393. A regulation that restricts the use of property without depriving the owner of all economically beneficial use may constitute a taking based on a complex of factors, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.*

The Takings Clause "protects rather than creates property interests." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). "Thus, to prevail on a takings claim, a plaintiff first must demonstrate that he has a protectable property interest." *Id.* "[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 322 (5th Cir. 2022).

Plaintiff claims that a taking occurred when the code enforcement officer directed plaintiff to remove vehicles and equipment on his property.[26] Since this claim does not involve the acquisition of plaintiff's land, the regulatory-takings framework applies. The Court finds that plaintiff has failed to state a claim in light of the

---

[26] R. Doc. No. 1-5, ¶ 10.

10

complex of factors used to determine a regulatory taking. Most significantly, plaintiff fails to allege the "primary" factors of "[t]he economic impact of the [officer's demand] . . . [and] the extent to which the [demand] has interfered with distinct investment-backed expectations." *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). Plaintiff has not alleged that the officer's demand resulted in economic harm but rather alleges merely that he has lost reasonable use and enjoyment of his property.[27] Furthermore, he does not allege how his inability to store vehicles and equipment on the site upset his investment-backed expectations. Since the plaintiff does not plead these allegations, his regulatory-takings claim necessarily fails. *Cf. Brown v. Legal Found. of Washington*, 538 U.S. 216, 234 (2003) ("Under such an analysis, however, it is clear that there would be no taking because the transaction had no adverse economic impact on petitioners and did not interfere with any investment-backed expectation."). Accordingly, the Court will dismiss plaintiff's first takings claim for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

With respect to the plaintiff's second takings claim, the Court finds that the claim is not ripe for adjudication and therefore must be dismissed. Plaintiff asserts that the rezoning of another property of his as residential has "hinder[ed]" his ability to obtain a permit to "plac[e] manufactured structures on the site."[28] The Supreme Court has instructed that takings claims are not ripe if the plaintiff still has the opportunity to seek a variance. *See Knick v. Twp. of Scott*, 588 U.S. 180, 187–88

---

[27] *Id.* ¶¶ 19–20.
[28] *Id.* ¶ 15.

11

(2019). As the party asserting jurisdiction, the burden is on plaintiff to prove that he no longer has an opportunity to seek a variance or did, in fact, seek a variance. *See Ramming*, 281 F.3d at 161 Since plaintiff has not alleged facts to this end and has not filed a response evidencing such facts, he has failed to establish the ripeness of his claim. Plaintiff's second takings claim therefore must be dismissed pursuant to Rule 12(b)(1).[29]

### c. Federal Procedural-Due-Process Claims

Plaintiff asserts that his right to procedural due process was violated in both incidents.[30] "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). A violation of procedural due process is not complete when a deprivation occurs; rather, it is not complete "unless and until the state fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

Plaintiff fails to state claims for violations of procedural due process as to both incidents. With respect to the first incident, plaintiff fails to allege inadequate state

---

[29] The Court notes that, even if the claim is ripe because a permit to build commercial structures on the site was supposedly denied, plaintiff's claim would still be dismissed for his failure to state a valid claim. Plaintiff does not state facts alleging economic harm or interference with investment-backed expectations. *Cf. Brown*, 538 U.S. at 234.
[30] R. Doc. No. 1-5, ¶¶ 21–22.

12

procedure. For the sake of its analysis, the Court assumes that the officer's demand alone constitutes a cognizable deprivation.

Due process usually requires a state to provide a person with adequate hearing prior to depriving that person of a protected interest. *See id.* at 127. "In some circumstances, however, . . . a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128. Post-deprivation remedies fulfill due process when the deprivation is the result of "unauthorized" conduct. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In such cases, a state "cannot be required constitutionally to do the impossible by providing predeprivation process." *Zinermon*, 494 U.S. at 129. Accordingly, "[a] procedural due process claim does not lie where the deprivation results from the unauthorized, intentional conduct of a state employee and the state provides a meaningful post-deprivation remedy." *McClure v. Biesenbach*, 355 F. App'x 800, 805 (5th Cir. 2009) (unpublished).

Here, plaintiff alleges that the demand to remove vehicles and equipment from the family-owned property was unauthorized and intentional. He asserts that he was within his rights to use the family-owned property for storage.[31] And he makes clear that the officer was acting with malice when he allegedly made "discriminatory remarks" to plaintiff and then made false reports to the DEQ.[32] At bottom, plaintiff

---

[31] *Id.* ¶ 10.
[32] *Id.* ¶¶ 9, 11.

13

alleges that the officer was acting out of personal vendetta rather than enforcing parish ordinances consistently with state procedures.

Since plaintiff alleges that the officer acted in an unauthorized and intentional manner, a procedural-due-process claim will lie only if plaintiff does not have recourse to a post-deprivation remedy. *See id.* at 805–806 (holding that the availability of an adequate post-deprivation remedy defeated plaintiff's procedural-due-process claim where "[t]he pleadings portray the officers' acts as rogue conduct"); *cf. Zinermon*, 494 U.S. at 130 (explaining that pre-deprivation process was not required where "the state official was not acting pursuant to any established state procedure, but, instead, was apparently pursuing a random, unauthorized personal vendetta against the prisoner"). While plaintiff does allege that he was not given pre-deprivation notice or hearing,[33] he does not allege the unavailability of an adequate post-deprivation remedy. Accordingly, plaintiff has failed to state a claim for a violation of procedural due process with respect to the officer's demand to remove vehicles and equipment from the family-owned property.

With respect to plaintiff's second procedural-due-process claim, the Court concludes that plaintiff has not pled a deprivation of a protected interest. Plaintiff specifically asserts that defendant's "refusal to issue permits" without notice or hearing beforehand violates his right to procedural due process.[34] Where a previously issued business permit is revoked without any notice or hearing, the Fifth Circuit has

---

[33] *Id.* ¶ 22.
[34] *Id.*

14

held that the issued permit constitutes a protected interest subject to the requirements of due process. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) ("[O]nce issued, a license or permit cannot be taken away by the State without due process."). Revocation of a license is subject to due process requirements because "once issued, a license or permit may become essential in the pursuit of a livelihood." *Id.* (internal quotation and citation omitted). This reasoning teaches that the issuance of a license or permit and subsequent reliance thereon create a protected interest and trigger due-process protections.

This case presents the inverse of the situation confronted by the Fifth Circuit in that a permit was never issued. Since a permit was never issued, plaintiff does not have a protected property interest in the permit. *Cf. L & F Homes & Dev., L.L.C. v. City of Gulfport*, 538 F. App'x 395, 406–07 (5th Cir. 2013) (unpublished) (holding that the plaintiff did have not a protected interest in obtaining water service where the plaintiff had never obtained water service and was not promised water service even though the defendant had notified the plaintiff that it was eligible for water service). Accordingly, the denial of plaintiff's permit application does not constitute a deprivation of a protected interest.

In conclusion, the Court will dismiss plaintiff's federal procedural-due-process claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

### d. Plaintiff's State Claims

Having dismissed plaintiff's federal claims, the Court now turns to plaintiff's state claims. The Court declines to exercise jurisdiction over these claims.

Federal district courts have supplemental jurisdiction over certain state-law claims pursuant to 28 U.S.C. § 1367. Subsection (c) of that provision permits district courts to decline exercising jurisdiction over state-law claims if

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these statutory factors, district courts must also weigh the traditional common-law factors of judicial economy, convenience, fairness, and comity. *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011). The balance of the common-law factors may provide a "compelling reason" for the purposes of § 1367(c)(4) to decline supplemental jurisdiction. *See id.* (finding a "compelling reason" to decline supplemental jurisdiction where the common-law factors heavily favored remand). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).

When, as here, all federal claims are eliminated prior to trial, the "general rule" is to dismiss the supplemental state-law claims. *See Enochs*, 641 F.3d at 161 (collecting cases); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). After considering the applicable statutory and common-law factors, the Court finds no reason to depart from the general rule.

First, the statutory factors favor dismissal of the state-law claims. The Court has already disposed of all claims over which it has original jurisdiction. *Cf.* 28 U.S.C. § 1367(c)(3). Accordingly, the state-law claims necessarily predominate over the non-existent federal claims. *See Enochs*, 641 F.3d at 159; *cf.* 28 U.S.C. § 1367(c)(2). Furthermore, as discussed below, the heavy balance of the common-law factors in favor of dismissal provides a "compelling reason[]" for declining jurisdiction. *See Enochs*, 641 F.3d at 159; *cf.* 28 U.S.C. § 1367(c)(4).

Second, the common-law factors definitively favor dismissal. Judicial economy would not be undermined as this Court has not made any ruling on state law or effecting the state-law claims. With respect to fairness, it is not unfair for these parties to litigate Louisiana-law claims in Louisiana state court. *See Enochs*, 641 F.3d at 160. In fact, it is fairer for the parties to litigate the state-law claims in state court because it would "procur[e] for them a surer-footed reading of applicable law." *See Gibbs*, 383 U.S. at 726. Lastly, comity demands that federal courts do not pronounce needless decisions of state law. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided . . . as a matter of comity.").

Upon weighing the relevant factors, the Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims. Accordingly, the Court will

remand this matter to the 23rd Judicial District Court in St. James Parish for further adjudication of plaintiff's state law claims.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion to dismiss is **GRANTED IN PART**. Plaintiff's federal takings claim for the rezoning of his commercial property is hereby **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff's remaining federal claims for a taking of his family-owned property, selective enforcement, and violations of procedural due process are hereby **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the 23rd Judicial District Court in St. James Parish for further adjudication of plaintiff's state law claims.

New Orleans, Louisiana, March 12, 2025.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE